## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PHILLIP THOMAS KERR**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 15-0746**

**ORLEANS PARISH SHERIFF'S OFFICE, PRISON**          **SECTION "E"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  On April 9, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for defendants participating by conference telephone call.[2]   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.    **Factual and Procedural Background**

A.    **Original Complaint**

The plaintiff, Phillip Thomas Kerr ("Kerr"), is an inmate who is currently housed in the Orleans Parish Prison system ("OPP").  Kerr filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, the Orleans Parish Sheriff's Office and Prison and Orleans Parish Sheriff Marlin N. Gusman.  He sought monetary compensation apparently in connection with certain physical symptoms he simply listed as "watery eyes, running nose, difficulty

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.  The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 6.  The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

breathing, face swelling, severe sore throat" with no cause or other allegation included in the form complaint.

**B.      The *Spears* Hearing**

Kerr testified that he was booked on January 7, 2015, after his arrest for fraud on an innkeeper after using a stolen credit card number to secure a hotel room.  He was moved to the Conchetta Jail within OPP on January 9, 2015.  While there for about two weeks, he began to experience a swollen throat.  He filed a sick call request to see the nurse.  While waiting to see someone, his throat got so bad he could hardly breathe.  He finally saw a nurse about one week later and was given antibiotics and ibuprofen.  Since then, he has tried to get copies of his medical records.  He stated that he has seen medical personnel twice since then for the recurring problems with his breathing and watery, burning eyes.

Kerr further alleged that he made complaints to the psychiatric personnel that he was depressed and suicidal.  As a result, in late January of 2015, he was transferred to Templeman Jail, Phase 5 ("Templeman 5"), where he was placed on suicide watch and placed on anti-depressants.  He stated that he has previously been diagnosed with post-traumatic stress disorder and severe depression.  He remained on suicide watch for about one week and was then placed in a step down program on a different tier in Templeman 5 where he could be monitored.

While in Templeman 5, he submitted two sick call requests and was told he was on the list to see a doctor.  He has not otherwise seen a nurse.  Kerr clarified that he has seen a doctor while in Templeman 5 for the nerve damage in his leg but he did not include his other symptoms on that sick call request form nor did he discuss them with the doctor.

Kerr also testified that he submitted one grievance complaint related to his medical issues. He received a response advising him that he would have to wait to be seen by the doctor.

Kerr also stated that he sued Sheriff Gusman because he was told that the Sheriff was in charge of the jail and the medical department. He concedes that the Sheriff would have no personal knowledge about his medical complaints.

However, Kerr also contends that the Sheriff should know about the complaints other inmates have made about black mold in several of the OPP buildings, including OPP and Conchetta. He stated that the black mold around Conchetta tier 2T where he was may have contributed to his throat symptoms. He claims that there was black mold on the walls and ceilings of the showers and cells.

Kerr explained that he was moved to Templeman 5 at the end of January of 2015 until about five weeks prior to the hearing. At that time, he was moved to Temporary Detention Center ("TDC"), where the step down program inmates were moved. He has not filed any sick call requests since he has been there because his symptoms have improved since his last move.

C.    **Medical and Grievance Records**

Based on Kerr's testimony, the Court ordered, and defense counsel has provided, copies of Kerr's medical and grievance records, which were also provided to Kerr.[3] The records reflect that Kerr has been regularly examined and treated for his mental health issues just as he attested during the *Spears* Hearing. The records also contain the following information with regard to Kerr's physical symptoms listed in his complaint and discussed at the *Spears* Hearing.

---

[3]These records have been separately filed into the record under seal.

3

On January 10, 2015, while housed in Conchetta, Kerr filed a request for service complaining that he had a "severe cold" and needed antibiotics. Courtney Garrus responded on January 26, 2015, advising Kerr that he would have to submit a sick call request to the nurse to be seen by a medical provider.

In the meantime, on January 11, 2015, Kerr submitted a sick call request stating that he had a severe cold and swollen lymph-nodes in his throat. The nursing triage notes, dated January 12, 2015 and marked urgent, indicated that he had cold symptoms and was referred to the doctor sick call. He was seen by a nurse practitioner, Jone H. Preston, on January 15, 2015, for his complaints of a severe cold, throat irritation, and productive cough. He was indicated to have pharyngitis and was prescribed the antibiotic amoxicillin and ibuprofen for ten days.

On February 6, 2015, Kerr was seen for his unrelated knee problems and for a follow-up for his pharyngitis. He told the doctor that his symptoms had cleared and the issue was indicated to be resolved. The records do not contain any other requests for medical care related to Kerr's throat and cold symptoms after this visit.

About one month later, on March 3, 3015, while housed in TDC, Kerr submitted a request for service simply to notify the prison officials that he was filing a lawsuit because he was exposed to black mold when he was housed in Conchetta which caused him to have to seek medical care for his throat. Carlos Louque replied on March 4, 2015, indicating that there is no black mold at Conchetta.

In response to this Court's directive, Kerr was examined on April 9, 2015, where he indicated that he had a dry cough and occasional runny nose for about two months. The health care provider, Juong Nguyen, observed a red pharynx and nasal congestion but normal eyes with

complaints of itching.  He assessed Kerr to have allergic rhinitis, eye itching, and bronchitis.  Kerr was prescribed with Claritin for twenty-one (21) days with an order for a chest x-ray.  He was advised to return in two weeks for a follow-up for allergies and bronchitis.

## II.    Standards of Review Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28.  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

III.    **Analysis**

A.      **Orleans Parish Sheriff's Office and Prison**

As an initial matter, the Court finds that the Orleans Parish Sheriff's Office and Prison are not suable entities or persons subject to suit under § 1983.  For the following reasons, Kerr's claims against these defendants must be dismissed.

The Orleans Parish Sheriff's Office is not a suable entity in this federal court.  In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, suit must be brought against a person with capacity to be sued, and state law governs whether a defendant has that capacity.[4]  Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person,"  which is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code Ann. art. 24.  In Louisiana, however, a Parish sheriff's office is not a legal entity capable of suing or being sued.  *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988).  Thus, for purposes of suit in a federal court, the Orleans Parish Criminal Sheriff's Office is not a proper defendant under Fed. R. Civ. P. 17.

Similarly, under federal law, the Orleans Parish Prison is not a person for purposes of suit under § 1983.  *See* 42 U.S.C. § 1983 (2006); *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989).  To recover under § 1983, a plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.  *See Flagg Bros*., *Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Country v. Dodson,* 454 U.S. 312 (1981).  Under federal law, a county (or parish) prison facility is not a "person."  *Cullen v. DuPage County*, No. 99C1296, 1999 WL 1212570, at *1 (N.D.  Ill.  Dec. 14,  1999); *Whitley  v.  Westchester  County  Corr.  Facility  Admin.*, No.

---

[4]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  *See* Fed. R. Civ. P. 17(b).

97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982). The Court finds no law, constitutional, statutory, or otherwise, that defines a parish jail or any unit or department therein to be a person with the capacity to sue or to be sued. A parish jail is, as this Court has previously described, "not an entity, but a building." *See Jones v. St. Tammany Parish Jail,* 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing St. Tammany Parish Jail with prejudice); *Jeffries v. St. Bernard Parish Sheriff's Dep't*, No. 12-1063, 2013 WL 6044365 at *4 (E.D. La. Nov.13, 2013) (Order adopting Report and Recommendation); *Bland v. Terrebonne Parish Crim. Just. Complex*, No. 09-4407, 2009 WL 3486449, at *3 (E.D. La. Oct.23, 2009) (Order adopting Report and Recommendation).

Kerr's claims against the Orleans Parish Sheriff's Office and Prison must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with 28 U.S.C. § 1915(e) and § 1915A.

**B.     Sheriff Marlin N. Gusman**

Kerr named Sheriff Gusman as a defendant because he is in charge of OPP and the medical unit. Kerr testified, however, that Sheriff Gusman would not have been aware of his need for medical care or that he was impacted by the alleged conditions at Conchetta which he claims to have caused his physical symptoms.

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to liability on a claim for damages under §1983. Thus, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.

*See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999);  *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").  Sheriff Gusman only would be liable under § 1983 if he were "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981); *see also*, *Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980). Kerr does not allege and in fact denies that Gusman was personally involved in his medical care. He also has not alleged that he has suffered any injury as a result of any directive, training, or other policy implemented by Sheriff Gusman that would create vicarious liability under § 1983.  *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).  Kerr has not alleged a personal connection or action that would render Gusman liable for the actions or inactions of his subordinates under § 1983.

For these reasons, Kerr's claims against Sheriff Gusman are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A, and 42 U.S.C. § 1997e.

### C. <u>Medical Indifference</u>

Even if Kerr had named a proper defendant, his claims of medical indifference fall far short of that required to state a claim that would survive the Court's screening.  As a pretrial detainee, his constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, which, like the Eighth Amendment, places a duty on the State and its actors to protect against harm to persons in its confinement. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).  In this type of

case, where the inmate alleges an "episodic act or omission" by jail officials, the Court applies an analysis that is identical to that applied in Eighth Amendment cases. *Hare*, 74 F.3d at 643. Under this standard, the plaintiff must show that an official acted with deliberate indifference to his constitutional rights. *Id.*, at 636 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (finding that the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials or prison doctors and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

As indicated above, the Court received copies of Kerr's medical and grievance records and those same records were provided to Kerr by defense counsel. Under these circumstances, the Fifth Circuit has held that "'[m]edical records of sick calls, examinations, diagnoses, and medications may [be used to] rebut an inmate's allegations of deliberate indifference.'" *Gobert*, 463 F.3d at 347 n.24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

In this case, Kerr's testimony and the records reflect that, while at Conchetta, Kerr submitted only one request for medical care for his symptoms of throat swelling and related cold symptoms. He was seen by a nurse practitioner almost immediately and diagnosed and treated for pharyngitis, or a swollen and inflamed throat. He was seen a second time for a follow-up for these symptoms and his knee problems while he was housed in Templeman 5. At that time, he advised the physician

that his symptoms had fully resolved.  Kerr made no other requests for treatment related to his swollen throat and related symptoms.

Thus, Kerr was seen and treated for his complaints about his throat and cold symptoms following his only request for care.  Because he made no other request for care for those symptoms, he can not established that any of the medical personnel were deliberately indifferent to a known and serious condition or illness.  When he was examined at the Court's direction for his renewed complaints, he was again provided medication for the symptoms he was exhibiting at that time.  Nothing presented by Kerr, however, would establish that even a properly identified defendant among the prison or medical personnel was indifferent to his serious medical needs.

## IV.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Kerr's § 1983 claims against the defendants, the Orleans Parish Sheriff's Office and Prison and Orleans Parish Sheriff Marlin N. Gusman, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with 28 U.S.C. § 1915(e) and § 1915A and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this day of 29th of May, 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.